### Case No. 5,046.

### In re FRANCKE et al.

[7 Ben. 420; 1. 10 N. B. R. 438; 6 Chi. Leg. News. 414; 3 Am. Law Rec. 298.]

District Court, S. D. New York. Sept. 1, 1874.[2]

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Reversed in Case No. 5,045.]

Joseph Gutman, Jr., for bankrupts.

BLATCHFORD, District Judge. The bankrupts were adjudged such, as copartners, by this court, on the 28th of June, 1872, on a petition filed against them. They appeared and filed a written consent to an adjudication. A warrant was issued, and the first meeting of creditors was held on the 2d of August, 1872. On that day thirty creditors proved their debts. An assignee was elected by the votes of twenty-seven of these. On the 19th of September, 1872, the bankrupts filed their sworn schedules of debts and assets. On the 23d of July, 1874, and not before they filed a petition for discharge. By the 24th of July, 1874, forty-four creditors had proved their debts. The hearing on the petition for discharge was fixed for the 18th of August, 1874. No creditor appeared to oppose a discharge. The assignee has received moneys belonging to the estate to the amount of $9.996.22. It is not shown that the assets of the bankrupts are equal to fifty per centum of the claims proved against their estate, upon which they are liable as principal debtors; nor is it shown that the assent, in writing, of a majority in number and value of their creditors, to whom they have become liable as principal debtors, and who have proved their claims, was filed at or before the time of the hearing of the application for discharge. According to the said schedules, all of the debts were contracted after the 31st of December, 1868. Notwithstanding these facts, the register certifies that the bankrupts have "conformed to their duty, under the act of congress entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved March 2, 1867 [14 Stat. 517], and the acts amendatory thereof and supplemental thereto, and have con-

formed to all the requirements of the said act, and the acts amendatory thereof and supplemental thereto."

The first section of the act of July 27, 1868 (15 Stat. 227), amends the second clause of the thirty-third section of the said act of 1867, so as to read as follows: "In all proceedings in bankruptcy commenced after the first day of January, eighteen hundred and sixty-nine, no discharge shall be granted to a debtor whose assets shall not be equal to fifty per centum of the claims proved against his estate, upon which he shall be liable as the principal debtor, unless the assent, in writing, of a majority in number and value of his creditors to whom he shall have become liable as a principal debtor, and who shall have proved their claims, be filed in the case at or before the time of the hearing of the application for discharge." By the first section of the act of July 14, 1870 (16 Stat. 276), it is declared that the provisions of the second clause of the thirty-third section of said act of 1867, as amended by the first section of the said act of 1868, shall not apply to those debts from which a bankrupt seeks a discharge, which were contracted prior to the 1st of January, 1869.

The requirements of the act of 1868 apply to "all proceedings in bankruptcy" commenced after the 1st of January, 1869, whether the petition be one filed by, or one filed against, the debtor. Under those requirements, the right to discharges in this case is not shown. But the certificate of the register implies that it is supposed, that, because this is a case of compulsory or involuntary bankruptcy, discharges may and must, under the act of June 22, 1874, be granted, without a compliance with the requirements of the act of 1868.

The ninth section of the act of 1874 provides as follows: "In cases of compulsory or involuntary bankruptcy, the provisions of said act" (the original bankruptcy act of March 2, 1867), "and any amendment thereof, or of any supplement thereto, requiring the payment of any proportion of the debts of the bankrupt, or the assent of any portion of his creditors, as a condition of his discharge from his debts, shall not apply; but he may, if otherwise entitled thereto, be discharged by the court in the same manner and with the same effect as if he had paid such per centum of his debts, or as if the required proportion of his creditors had assented thereto. And in cases of voluntary bankruptcy, no discharge shall be granted to a debtor whose assets shall not be equal to thirty per centum of the claims proved against his estate, upon which he shall be liable as principal debtor, without the assent of at least one-fourth of his creditors in number, and one-third in value; and the provision in section thirty three of said act of March second, eighteen hundred and sixty-seven, requiring fifty per centum of such assets, is hereby repealed." The provisions of the act of 1868 were in amendment of the thirty-third section of the act of 1867.

What is the effect of the ninth section of the act of 1874? Was it intended to apply to cases commenced before the date of its passage? It does not repeal anything except the provision "requiring fifty per centum of such assets;" and the twenty-first section of the act of 1874 repeals only such acts and parts of acts as are inconsistent with the provisions of the act of 1874. Is it inconsistent with the provisions of the act of 1874, that, in the present case, it should be necessary to comply with the requirements of the act of 1868? Does the repeal of the provision "requiring fifty per centum of such assets," make the act of 1868 inapplicable to the present case?

The ninth section of the act of 1874 must be construed in connection with the other provisions of the same act. The language of the ninth section is general. It says, "in cases of compulsory or involuntary bankruptcy," and "in cases of voluntary bankruptcy." This language is satisfied by applying it to cases to be commenced after the passage of the act of 1874. That is the natural meaning of such language. It is not to be construed as applying to cases commenced before, and pending at the time of, the passage of the act of 1874, unless the intention to have it so apply is apparent from the act. The intention to have other provisions of the act of 1874 apply to cases commenced before its passage is manifested and declared by that act, and, if such intention is not declared in regard to the provisions of section 9, and if those provisions can have proper scope without applying them to cases commenced before the passage of the act of 1874, and, especially, if, to apply those provisions to such cases, would be inconsistent with the intent manifested by all the provisions of the act of 1874, considered together, then the inference is proper, that it was not intended that those provisions should apply to cases commenced before the passage of the act of 1874. The twelfth section of the act of 1874, in amendment of the thirty-ninth section of the act of 1867, in regard to cases of compulsory or involuntary bankruptcy, declares that the provisions of such twelfth section shall apply to cases commenced after the 1st of December, 1873, and prior to the passage of the act of 1874, as well as to those commenced after its passage. So, too, the seventeenth section of the act of 1874, which prescribes proceedings for a composition with creditors, prescribed them for "all cases of bankruptcy now pending or to be hereafter pending."

Under the act of 1874, in cases of compulsory or involuntary bankruptcy commenced after its passage, one-fourth in number and one third in value of the creditors of a debtor must join in a petition against him, or he cannot be adjudged a bankrupt. The idea of the act, then, seems to be, that if such num-

ber and value of creditors bring the debtor into court, in cases commenced after its passage, he shall not be required, in order to obtain a discharge, to obtain any further assent of any creditor to his discharge or to pay any specified proportion of his debts; for, it provides, in section 9, for dispensing, in such case, with the payment of any per centum of debts, and with the assent of any proportion of creditors. The bringing of the petition is regarded, in respect to cases commenced after the passage of the act of 1874, as the assent of the one-fourth in number and the one-third in value, of the creditors, to the discharge. But, a voluntary petitioner comes into court of his own volition, and without the previous assent of any of his creditors. As to such a case, commenced after the passage of the act of 1874, the ninth section of that act declares that the debtor shall not have a discharge unless his assets shall be equal to thirty per centum of the claims proved against his estate, upon which he shall be liable as principal debtor, or unless one fourth of his creditors in number, and one-third in value, assent to his discharge. In regard to voluntary cases, the assent of creditors seems to be required with a view of placing the bankrupt on the same footing, as to the action of creditors, with the bankrupt in involuntary cases, the thirty per centum of assets being regarded as the equivalent of the assent. The ninth section of the act of 1874 does not contain language simply repealing, as a whole, the provision found in the act of 1868. It prescribes what per centum of assets there must be in cases of voluntary bankruptcy, namely, thirty per centum, and then repeals the provision "requiring fifty per centum of such assets." Provision being made by it for cases of compulsory or involuntary bankruptcy, and also for cases of voluntary bankruptcy, without any declaration that cases pending at the time of the passage of the act are referred to, the repeal of the fifty per centum provision may properly be regarded as a repeal of it only in pari materia with the scope of the rest of the section, with which it is joined by a copulative, and as repealing it only in reference to cases to be commenced after the passage of the act. In this view, there is nothing in the provisions of the act of 1868, as applicable to cases pending at the time of the passage of the act of 1874, that is inconsistent with the provisions of the ninth section of the latter act, because such last-named provisions have reference only to cases to be commenced after the passage of the act of 1874.

One consequence of holding that, by virtue of the ninth section of the act of 1874, discharges can be granted in this case without a compliance with the provisions of the act of 1868, would be that, in some cases of involuntary bankruptcy commenced before the passage of the act of 1874, bankrupts would have obtained discharges only on a compliance with the act of 1868, in other such cases bankrupts would have endeavored to comply with the act of 1868, but failed to obtain the assent of their creditors, and in other such cases bankrupts would have made no effort to obtain discharges because satisfied they could not obtain such assent, and yet now all bankrupts put into involuntary bankruptcy in proceedings commenced before the passage of the act of 1874, would obtain discharges without procuring any assent of any creditor. This would work a practical discrimination among involuntary bankrupts in cases commenced before the passage of the act of 1874, resulting in injustice to some or in injustice to the creditors of some—injustice to bankrupts who had complied with the act of 1868, or injustice to the creditors of those who had failed to obtain the assent required by the act of 1868. A construction which would so operate is not to be given unless imperatively indicated.

In considering the question, the fact has not been overlooked that, under the act of 1874, the requirement that one-fourth in number and one-third in value of the creditors shall join, in order to put a debtor into compulsory bankruptcy, applies to all cases commenced after the 1st of December, 1873. But such fact is of no moment. The debtor so put into bankruptcy in a case commenced between the 1st of December, 1873, and the 22d of June, 1874, must, indeed, although put into bankruptcy by one-fourth in number and one-third in value of his creditors, still comply with the provisions of the act of 1868, before he can obtain a discharge. But this is only through a failure, in the act of 1874, to relieve him from the operation of the act of 1868, and imposes upon him no burden to which he was not subject when the act of 1874 was passed.

Entertaining these views, I must withhold discharges in this case until the provisions of the act of 1868 are complied with.